410 So.2d 1346 (1982)
STATE of Florida, Appellant,
v.
LEON COUNTY, Florida, Appellee.
No. 61359.
Supreme Court of Florida.
February 25, 1982.
*1347 Donald S. Modesitt, State Atty., for the Second Judicial Circuit, Tallahassee, for appellant.
F.E. Steinmeyer, III, County Atty., and Hugh M. Taylor and Elise F. Judelle of Bryant, Miller & Olive, Tallahassee, for appellee.
McDONALD, Justice.
The state appeals a trial court order validating the issuance of certain industrial development revenue bonds. We have jurisdiction pursuant to article V, section 3(b)(2), Florida Constitution, and affirm the final judgment.
In June 1981 the Tallahassee City Commission passed a resolution declaring part of Tallahassee to be a blighted area as defined by section 163.340(8), Florida Statutes (1979). In August 1981 the Leon County Commission passed a resolution, pursuant to chapter 159, part II, Florida Statutes (Supp. 1980),[1] and chapter 163, part III, Florida Statutes (1979),[2] authorizing the issuance of not more than $10,000,000 of industrial development revenue bonds for the purpose of financing part of the acquisition and construction cost of a privately owned 300-room convention center hotel and related facilities. The proposed site is within the blighted area and is directly across the street from the newly constructed city-county civic center.
The trial court confirmed and validated the bonds, finding, among other things, that the resolution had been properly adopted, that the bonds would not constitute a public debt, that the criteria set out in section 159.29 had been met, and that the project would serve a paramount public purpose. The state raises three issues on appeal: (1) a public lodging facility does not serve a paramount public purpose and is not an industrial or manufacturing plant; (2) a nonjudicial body's determination of whether statutory requirements have been met cannot be final and conclusive; and (3) the failure to allege the interest rate as required by subsection 75.04(1), Florida Statutes (Supp. 1980), makes the complaint fatally deficient. We find no merit to any of these points.
The instant project falls within the definition of a "commercial project in a designated slum area or blighted area." § 159.27(19). We agree with the circuit court's conclusion that this project serves a paramount public purpose in the elimination of blight. This is the same public purpose as provided for in chapter 163, part III, which this Court upheld in State v. Miami Beach Redevelopment Agency, 392 So.2d 375 (Fla. 1980).
Section 159.29 states that "the determination of the local agency as to compliance with [this section's] criteria and requirements shall be final and conclusive." This Court has acceded to this statement in numerous cases. State v. City of Riviera Beach, 397 So.2d 685 (Fla. 1981); State v. Jacksonville Port Authority, 266 So.2d 1 (Fla. 1972); State v. County of Dade, 250 So.2d 875 (Fla. 1971). We agree with the state that such findings and conclusions are *1348 subject to judicial review,[3] but nothing has been presented which requires disturbing the findings of the agency and the circuit court.
The state's third claim is that subsection 75.04(1) requires an agency's complaint seeking bond validation to set out the interest rate the subject bonds are to bear. We find that the trial court correctly concluded that the county's failure to state a finite, specific rate of interest was not fatal to this bond program. We disagree, however, with the trial court's reasoning that section 159.34 must be read in pari materia with section 215.34, Florida Statutes (Supp. 1980), in order to reach this conclusion.
Subsection 215.84(3) sets out a formula for calculating the maximum allowable interest rate which certain governmental bonds may bear. Subsections 215.84(2)(b) 2 and (7), on the other hand, specifically exclude bonds issued under part II of chapter 159. The county issued the instant bonds under the authority of chapter 159, part II, and we find section 215.84 inapplicable to the instant case.
Subsection 159.34(1), as amended in 1980, provides that bonds "shall bear interest at such rate or rates, including variable rates, notwithstanding any limitation in other laws relating to the maximum interest rate permitted for bonds ... as may be determined or provided for by the local agency." In view of this language, we can find no legislative intent that would mandate reading subsection 75.04(1) to require the complaint to state a finite, specific rate of interest for the issuance of industrial bonds as long as the complaint sets forth the method by which the interest will be determined.
The county resolution authorizing these bonds states that they shall bear a rate of interest "not to exceed the maximum allowed by Florida law, as shall be provided by subsequent resolution of the Issuer at or prior to the sale of the Bonds." Leon County, Fla., Resolution to Finance Constructing a Capital Commercial Project, § 6 (Aug. 11, 1981). The complaint does not set out a specific rate of interest but, rather, follows the resolution and says that the rate will be that rate set by resolution prior to sale of the bonds. The state contends that there is no "maximum allowed by Florida law," and we agree. As discussed above, section 215.84 does not apply to these bonds, and we can find no other statutory maximum applicable to these bonds. Indeed, by its language, subsection 159.34(1) leaves setting the rate to the local agency. We assume that the legislature has so provided in order to take into account the prevailing high and fluctuating interest rates so that local agencies can compete in the bond market. We agree with the trial court that the county's statements in the resolution and complaint are sufficient and that a specific interest rate need not be alleged or proved in this validation.
Affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ALDERMAN and EHRLICH, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
I dissent from the affirmance of the decree of validation because the proposed project does not serve a paramount public purpose and therefore may not be financed by bonds issued by a governmental body. Such financing of a private business is forbidden by article VII, section 10, Florida Constitution.
A capital project, part of an urban redevelopment plan under chapter 163, part III, Florida Statutes (1979), may be found eligible for public bond financing (provided the bonds are payable only from revenue produced by the facilities financed) when it serves a paramount public purpose. A *1349 project may be found to serve the public purpose of urban redevelopment, even though a substantial portion of the physical assets financed will end up in private hands. State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1980). One hotel, however, does not constitute an urban redevelopment plan. The proposed hotel in the present case is an industrial development project under chapter 159, part II, Florida Statutes (Supp. 1980), and it cannot be bootstrapped into constitutional validity by reference to the Community Redevelopment Act. The hotel project must be examined, for constitutional purposes, on its own merits.
Under article VII, section 10, Florida Constitution, a capital project must serve a paramount public purpose (and must be self-liquidating) in order to be eligible for industrial development revenue bond financing. Wald v. Sarasota County Health Facilities Authority, 360 So.2d 763 (Fla. 1978); Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304 (Fla. 1971). If the project to be financed is purely a profit-making facility to be sold or leased to private enterprise and then privately operated for profit, it does not serve a paramount public purpose. State v. Jacksonville Port Authority, 204 So.2d 881 (Fla. 1967); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952). Such a project may only be financed by public bonds if specifically allowed by one of the exceptions in article VII, section 10. The only possibly applicable exception is found in subsection 10(c), and it requires the project to be an industrial or manufacturing plant. It is clear that the proposed project, a hotel, does not come within the exception.
The majority opinion is unclear as to the precise constitutional justification for bonded financing of the proposed hotel project. It is suggested that the public purpose is the elimination of blight but reference is also made to the project's proximity to the civic center. The implication of the latter reference is that the hotel will be utilized by the public in connection with events held at the civic center. No one is suggesting, however, that the proposed hotel will be the only one used in connection with the civic center, nor that all the hotel's guests will be patrons of civic center events. The Industrial Development Financing Act only explicitly authorizes financing of lodging facilities as appurtenant parts of other public projects. It was never the intent of the legislature to bestow the benefit of public financing on some hotel operators while denying it to others. Such would be a departure from principles of equality before the law.
The majority opinion cites no authority, and the proponents have cited none, that clearly shows why we are free to ignore the plain language of section 75.04(1), Florida Statutes (1981), which provides, "The complaint shall set out ... the amount of the bonds or certificates to be issued and the interest they are to bear."
I find that the proposed project is not authorized by the statute. If indeed the legislature intended to authorize public financing of this project, it has overstepped the limitations imposed by article VII, section 10, and the statute is to that extent unconstitutional. The decree of validation should be reversed.
NOTES
[1] Florida Industrial Development Financing Act, §§ 159.25  159.431.
[2] Community Redevelopment Act of 1969, §§ 163.330  163.450.
[3] We see this as part of this Court's function in reviewing bond validations to determine whether the issuing agency had the power to act and whether it exercised that power in accordance with law. See State v. Leon County, 400 So.2d 949 (Fla. 1981).